IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHANIE AND JAMES GREAR, )
)
        Plaintiff, )    Case No. 1:21-cv-237-SPB
)
        v. )
)
U.S. BANK, et al., )
)
        Defendants. )

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

     In this civil action, Plaintiffs Stephanie and James Grear have sued Defendants U.S. Bank and TVM Enterprises, Inc. d/b/a Monarch Recovery ("Monarch") for damages they claim to have incurred in connection with the allegedly wrongful repossession of their vehicle. Their eight-count Amended Complaint asserts statutory claims as well as claims arising under Pennsylvania tort law.

     Pending before the Court is the Defendants' motion to dismiss most of these claims. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

## I.  BACKGROUND[1]

     Plaintiffs are residents of Erie, Pennsylvania who, at times relevant to this lawsuit, leased a 2017 Jeep Cherokee (the "vehicle"). ECF No. 26, ¶¶ 2, 6. U.S. Bank provided the financing for Plaintiffs' lease. *Id.* ¶ 6.

---

[1] The following facts are taken from Plaintiffs' Amended Complaint, ECF No. 26, which is their operative pleading. For present purposes we assume the truth of all well-pled facts in the Amended Complaint.

On or about July 24, 2020, after receiving a payoff/purchase quote for the lease, Plaintiffs forwarded two checks to U.S. Bank, one in the amount of $14,000 and the other in the amount of $1,916.43 for a total of $15,916.43. ECF No. 26, ¶7. Unbeknownst to Plaintiffs, the Bank failed to properly apply the totality of these proceeds toward the lease payoff and vehicle purchase. *Id.* at ¶¶ 8, 11. Instead, U.S. Bank applied the $1,916.43 toward Plaintiffs' regular $250.00 monthly lease payments and did not apply the $14,000 payment toward Plaintiffs' account at all. *Id.* Plaintiffs were not made aware of this fact until the Bank returned those funds to Plaintiffs some eight months later. *Id.* at ¶¶8, 9, 11.

In the meantime, Plaintiffs received two "threats of repossession" concerning the vehicle, despite the fact that their $1,916.43 payment was sufficient to cover their monthly charges for the remainder of 2020. ECF No. 26, ¶10. In or around December 2020, after receiving these threats, Plaintiffs continued making their $250 monthly payments on their lease. *Id.*

Thereafter, on or about July 23, 2021, Plaintiffs again obtained a purchase/payoff quote in the amount of $13,460.45 from U.S. Bank. ECF No. 26, ¶¶12-13. Plaintiffs then sent a check in that amount to U.S. Bank. *Id.* at ¶13.

Despite Plaintiffs' remittance of payment, U.S. Bank directed Monarch on or about August 3, 2021 to repossess Plaintiffs' vehicle at their residence. ECF No. 26, ¶14. Plaintiffs "believe and aver" that, when Monarch agreed to repossess the vehicle, it knew there was no default on the underlying loan, or the at least, it failed to perform any due diligence regarding either the existence of a loan default or the legality of the repossession. *Id.* at ¶18.

On the following day, Plaintiffs were in contact with U.S. Bank and were given another payoff/purchase quote in the amount of $13,457.73. They advised the Bank that their vehicle had been unlawfully repossessed and, after repeated inquiries by Plaintiffs, U.S. Bank eventually

returned the vehicle approximately two weeks later without requiring any further payment or consideration from Plaintiffs. ECF No. 26, ¶¶19-20.

On or about September 8, 2021, U.S. Bank charged Plaintiffs an additional payment in the amount of $973.50 for an entry designated "MISC NON-TAXABLE CREDIT POSTED." ECF No. 26, ¶21. Plaintiffs inquired of U.S. Bank what this charge represented, but they received no explanation. *Id.* at ¶21 and n. 1. They believe, however, that the charge represents U.S. Bank's attempt to recoup the payment it made to Monarch for its allegedly wrongful repossession of the vehicle. *Id.* at ¶¶22-25.

Plaintiffs claim that, as a result of the foregoing events, they suffered harm consisting of their loss of the vehicle as an asset, their loss of the use and enjoyment of the vehicle, the loss of time and expense dealing with Defendants' actions, and the accompanying emotional distress of having the vehicle repossessed. ECF No. ¶26. This lawsuit followed.

On January 23, 2022 Plaintiffs filed their Amended Complaint, which is their operative pleading. ECF No. 26. The Amended Complaint sets forth the following eight causes of action: a claim against Monarch alleging violations of the Fair Debt Collections Practices Act, 15, U.S.C. §1692 (Count I); a claim against U.S. Bank and Monarch alleging violations of the Pennsylvania Uniform Commercial Code, 13 Pa. C.S.A. §9609 (Count II); a claim against U.S. Bank and Monarch alleging negligence (Count III); a claim against U.S. Bank and Monarch alleging conversion (Count IV); a claim against U.S. Bank alleging fraud (Count V); a claim against U.S. Bank alleging negligent misrepresentation (Count VI); a claim against U.S. Bank and Monarch alleging violations of the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S §2270.4(a) & (b), made actionable through Pennsylvania's Unfair trade Practices and

Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq.* (Count VII); and a claim against U.S. Bank and Monarch alleging violations of the UTPCPL, 73 P.S. §201-2(4) (Count VIII).

Defendants subsequently filed their pending motion in which they jointly seek to dismiss all claims in Counts III through VIII of the Amended Complaint. Defendants' motion has since been fully briefed and is now ripe for consideration. *See* ECF Nos. 30, 31, 35, 40.

## II. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level....'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in the original)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, it must provide more than labels and conclusions; thus a "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Similarly, the Court need not credit inferences that are unsupported by the facts alleged in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004); *Winters v. Corry Fed. Credit Union*, C.A. No. 16-57 Erie, 2016 WL7375042, *1 (Dec. 20, 2016). Functionally, courts utilize a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950. Finally, "where there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

## III. DISCUSSION

As noted above, Defendants seek the dismissal of all claims in Counts III through VIII of the Amended Complaint. As grounds for dismissal, they argue that the various tort claims are barred by the "gist of the action" doctrine and/or the "economic loss" rule. In addition, they contend that the facts pled do not establish plausible claims for negligence or negligent misrepresentation or plausible violations of the FCEUA or UTPCPL.

We address Defendants' arguments below.

### A. *The "Gist of the Action" Doctrine*

"Under Pennsylvania law,[2] the gist of the action doctrine prevents a purely contractual duty from serving as the basis for a tort claim." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 216 (3d Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 65 (Pa. 2014)) (footnote added). Thus, "[w]hen a duty is created by contract, the gist of the action doctrine requires that a claim for a breach of that duty be brought in contract, not tort." *Id.* (citing *Bruno*, 106 A.3d at 68). "Tort actions arise from the breach of a duty owed to another as a matter of social policy, while breach-of-contract actions arise from the breach of a duty created by contract." *Id.* (citing

---

[2] A federal court overseeing state law claims "must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). The *Erie* doctrine applies equally whether a district court's jurisdiction is predicated on diversity or supplemental jurisdiction. *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 n.11 (3d Cir. 2012); *Gok v. Roman Cath. Church*, 550 F. Supp. 3d 221, 239, n.12 (E.D. Pa. 2021).

*Bruno*, 106 A.3d at 68; *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002); *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103– 04 (3d Cir. 2001)). Under Pennsylvania's iteration of the doctrine, "'the nature of the duty alleged to have been breached . . . [is] the critical determinative factor,'" and "tort claims that exist 'regardless of the contract'" are therefore actionable.  *Id.* (quoting *Bruno*, 106 A.3d at 68) (alteration in the original).

In this case, Defendants argue that the "gist of the action" doctrine bars each of the tort claims set forth in Counts III through VI of the Amended Complaint.  As an initial matter, Defendants' argument fails with respect to the negligence and conversion claims asserted against Monarch. "Because the gist of the action doctrine applies where the duties essentially flow from an agreement between the parties, a party who was not in contractual privity with the plaintiff cannot invoke the gist of the action doctrine to foreclose tort claims against him or her." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) (internal quotation marks and citations omitted); *see also Jefferson v. Carosella*, 266 A.3d 634, 2021 WL 4775626, at *11 n.11 (Pa. Super. Ct. 2021) (Table case) ("Because [plaintiff's] cause of action was based upon averments regarding the negligent construction of the house and was not based upon allegations of a breach of a contract, as no contractual privity existed between the parties, we find no support for [defendant's] assertion that [plaintiff's] negligence claim was barred by the 'gist of the action' doctrine.").  Here, no contractual privity is alleged as between Plaintiffs and Monarch.  Accordingly, the "gist of the action" doctrine does not bar Plaintiffs' claims against Monarch in Counts III and IV of the Amended Complaint.

Plaintiffs' claims against U.S. Bank stand on a different footing.  Based on Plaintiffs' reference to a vehicle "lease" which was "financ[ed]" by the Bank, ECF No. 26, ¶6, and their

reference elsewhere in the Amended Complaint to a "purchase agreement," *see id.*, at ¶56, it can be inferred that Plaintiffs were in contractual privity with the Bank pursuant to the lease, the purchase agreement, or some type of secured credit agreement.  In fact, Plaintiffs acknowledge this contractual privity in their brief.  Notably, however, Plaintiffs have not appended any contractual documents to their Amended Complaint, nor have they asserted a breach of contract claim.  Still, "judicial experience and common sense" dictates that Plaintiffs are party to a contractual agreement with the Bank, especially in light of their allegations suggesting that they would receive clear title to the leased vehicle in exchange for the quoted payoff figures.  *See* ECF No. 26, ¶¶ 6-14; *see also Iqbal*, 556 U.S. at 679 ("Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Regardless whether Plaintiffs are parties to a written agreement with the Bank or can demonstrate evidence of an oral contract extraneous to their lease agreement, the specifics of the parties' respective contractual obligations are not presently before the Court.  For this reason, the Court's evaluation of the "gist of the action" doctrine is better reserved for the summary stage, when the factual record is more developed.  *See Frank C. Pollara Grp., LLC v. Ocean View Investment Holding, LLC*, 784 F.3d 177, 186 (3d Cir. 2015) (noting that "'[a]pplication of [the gist of the action] doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims'") (first alteration in the original) (quoting *Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013)); *Boyer v. Clearfield Cnty. Indus. Dev. Auth.*, Civil No. 3:19-152, 2021 WL 2402005, at *15 (W.D. Pa. June 11, 2021) ("[D]istrict courts in this Circuit commonly allow contract and tort claims to simultaneously proceed into discovery and defer evaluating a gist of the action challenge until the summary judgment stage if necessary.") (citing *Apple Am.*

*Grp., LLC v. GBC Design, Inc.*, 294 F. Supp. 3d 414, 424 (W.D. Pa. 2018)); *see also H Contractors, LLC v. E.J.H. Construction, Inc.*, Civil Action No. 16-368, 2017 WL 658240, at *5-6 (W.D. Pa. Feb. 16, 2017) (denying motion to dismiss on "gist of the action" grounds, but allowing the movant to "revisit this issue after the close of discovery"). Accordingly, Defendants' motion to dismiss Counts III through VI on this basis will be denied without prejudice, so that U.S. Bank may reassert this defense at a later stage of these proceedings, if warranted.

### B. The "Economic Loss" Doctrine

Defendants next argue that Plaintiffs' negligence, conversion, fraud, and negligent misrepresentations claims are barred by the "economic loss" doctrine which, as they explain, "prohibits plaintiffs from recovering in tort [the] economic losses which they are entitled to only because of a contract." ECF No. 31 at 6 (citing cases). Defendants maintain that the Plaintiffs' losses in this case are purely economic and flow from the subject matter of their lease agreement.

The Pennsylvania Supreme Court has explained that

> application of the "economic loss" rule maintains the dividing line between tort and contract while recognizing the realities of modern tort law. Purely "economic loss" may be recoverable under a variety of tort theories. The question, thus, is not whether the damages are physical or economic. Rather, the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed. A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of duty arising independently of any contract duties between the parties, however, may support a tort action.

*Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005) (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)); *see also Dittman v. UPMC*, 196 A.3d 1036, 1052 (Pa. 2018). Consequently, the Court's application of the "economic loss" doctrine in this case essentially mirrors its analysis of

the "gist of the action" doctrine:  under either one, the Court must examine the source of the duty that the Plaintiffs claim was breached in order to determine if that duty arises independently of any governing contract.

Given the nature of the Court's analysis, the Court deems it prudent to address the applicability *vel non* of the economic loss doctrine at a later stage of these proceedings, when the record concerning contractual obligations is better developed.  *See H. Contractors, LLC*, 2017 WL 658240, at *6 (deferring analysis of economic loss doctrine where a more developed record was needed in order to determine whether the claims were predicated on contract or tort). Defendants' arguments for dismissal on this basis will therefore be denied without prejudice to be reasserted, if appropriate, at the Rule 56 stage.

### C.  The Viability of Plaintiffs' Negligence Claim

Separately, Defendants argue that Plaintiffs' averments fail to state a cognizable claim for negligence.  Under Pennsylvania law, a plaintiff may state a negligence claim by showing the existence of: (1) a legal duty, requiring the defendant to conform to a standard of conduct; (2) the defendant's failure to conform to that duty, or breach; (3) a causal connection between the defendant's breach and the plaintiff's injuries; and (4) damages.  *Martinez v. United States*, 682 F. App'x 139, 141 (3d Cir. 2017); *City of Philadelphia v. Beretta U.S.A. Corp.*, 227 F.3d 415, 422 n.9 (3d Cir. 2002) (citing *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)).

In Count III of the Amended Complaint, Plaintiffs assert a claim of negligence against both U.S. Bank and Monarch.  Plaintiffs aver that the Defendants acted negligently by:

    a)  failing to institute appropriate policies and procedures to comply with the applicable laws;

    b)  failing to institute policies, train personnel, and supervise personnel regarding lawful loans in the jurisdictions in which it operates;

c) failing to institute policies, train personnel, and supervise personnel regarding proper towing procedures;

d) failing to hire competent and/or honest personnel, to conduct towing operations;

e) failing to properly train and/or supervise its personnel.

f) failing to take reasonable care before using a tow vehicle as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

g) failing to ensure the creditor had any interest in or the present right of possession to the subject vehicle;

h) failing to ensure that the vehicle owner was not in default under any agreement with the creditor ordering the repossession.

i) Failing to institute policies to prevent breach of the peace to effectuate a repossession.

ECF No. 26, ¶¶33(a)-(i). Plaintiffs allege that the Defendants' "individual acts and/or omissions," as set forth above, were "substantial contributing factors and causes of violations of the [aforementioned] duties." *Id.* at ¶35. Plaintiffs further allege they "suffered actual damages proximately caused by Defendants' negligence . . . including but not limited to deprivations of the [quiet] use and enjoyment of the vehicle." *Id.* at ¶34.

Defendants argue that these averments are insufficient because they are nothing more than conclusory allegations which are not entitled to any presumption of truth and "do not nudge the claim across the line from conceivable to plausible." ECF No. 31 at 7 (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949). The Court agrees that the averments set forth above in subsections (a) through (f) and (i) are insufficiently pled and involve mere conclusory allegations of duty and breach. Absent from the Amended Complaint is any factual content demonstrating how either Defendant breached the duties alleged in those subsections. Also lacking are any well-pled averments establishing that the breaches alleged in subparagraphs (a)-(f) and (i) are the cause of Plaintiffs' alleged injury. Accordingly, those aspects of Plaintiffs' negligence claim will be dismissed without prejudice, to the extent further factual content can be provided.

The breaches alleged in subparagraphs (g) and (h) stand on a different footing.  These allegations relate to Defendants' alleged duty to verify that Plaintiffs' account was in default and/or that the Bank had an immediate possessory right to the vehicle prior to effectuating its repossession.  These alleged breaches, unlike the others, are supported by sufficient factual content elsewhere in the Amended Complaint and plausibly relate to the injury Plaintiffs have alleged.

Defendants insist, however, that no aspect of Plaintiffs' negligence claim can survive as against the Bank because Pennsylvania does not recognize an independent duty of care between lenders and borrowers.  Under Pennsylvania law, a cognizable negligence claim necessarily involves a duty of care toward the person harmed.  *See Adams v. Wells Fargo Bank, N.A.,* No. CV 16-0907, 2017 WL 6619015, at *2 (E.D. Pa. Dec. 27, 2017) ("[A]ny action in negligence is premised on the existence of a duty owed by one party to another. . . . Without a duty, negligence cannot form the basis of a claim."); *Wenrick v. Schloemann-Siemag Aktiengesellschaft,* 564 A.2d 1244, 1248 (Pa. 1989) ("Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act; if no care is due, it is meaningless to assert that a person failed to act with due care.").  In their brief, Defendants cite a number of cases from courts within this circuit that have dismissed claims against a lender or creditor based on the lack of a legally recognized duty to the borrower.  *See* ECF No. 31 at 8-9 (citing cases).[3]

---

[3] *See F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir. 1994) ( "in a lender-borrower relationship, there is no independent duty beyond [the] parties' contractual duties" and "remedies in tort . . . may not be maintained . . . in the absence of any independent duty owed by the breaching party to the plaintiff."); *Albino Constr. Co. v. Wells Fargo Bank, Nat'l Ass'n,* No. CV 21-35, 2021 WL 2529811, at *4 (E.D. Pa. June 17, 2021) (holding that lender did not owe a duty of care to borrower); *Allen v. Wells Fargo, N.A.,* No. 14-5283, 2015 WL 5137953, at *5 (E.D. Pa. Aug. 28, 2015) (dismissing negligence claim because "[u]nder Pennsylvania law, a lender generally does not owe a duty to a borrower."); *Schnell v. Bank of New York Mellon,* 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011) ("Under Pennsylvania law, a lender acts in his financial interest and does not owe a fiduciary duty to the borrower."); *Morgan v. Bank of Am., N.A.,* No. 18-3671, 2019 WL 1332179, at *4 (E.D. Pa. Mar. 25, 2019) (commercial lenders

At this stage of the proceedings, however, the Court is not persuaded that the authority cited by Defendants renders Plaintiffs' negligence claim completely implausible as matter of law. At least two of the cases cited by Defendants involved New Jersey law rather than Pennsylvania law. *See Coast Auto. Grp., Ltd. v. VW Credit, Inc.,* 34 F. App'x 818, 827 (3d Cir. 2002); *F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir. 1994). In addition, most of the cited cases involved an alleged breach of fiduciary duty or some independent duty of good faith -- neither of which are asserted here. *See, e.g., Coast Auto Grp., Ltd.,* 34 F. App'x at 827 (breach of fiduciary duty); *Bathgate,* 27 F.3d at 876 (breach of good faith); *Albino Constr. Co. v. Wells Fargo Bank, Nat'l Ass'n,* No. CV 21-35, 2021 WL 2529811 (E.D. Pa. June 17, 2021) (breach of fiduciary duty); *Morgan v. Bank of Am., N.A.,* No. 18-3671, 2019 WL 1332179, at *4 (E.D. Pa. Mar. 25, 2019) (breach of fiduciary duty). In *Schnell v. Bank of New York Mellon,* 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011), the court dismissed a claim for negligent misrepresentation against the defendant bank but did so based on the principle that a lender "does not owe a fiduciary duty to the borrower"). Other cases cited by the defense involved alleged duties that are also distinguishable from those alleged in this case. *See, e.g., Albino Constr. Co. v. Wells Fargo Bank, Nat'l Ass'n,* No. CV 21-35, 2021 WL 2529811, at *4 (E.D. Pa. June 17, 2021) (bank had no duty to exercise care in processing borrower's loan application under the Paycheck Protection Program); *Allen v. Wells Fargo, N.A.,* No. 14-5283, 2015 WL 5137953 (E.D. Pa. Aug. 28, 2015) (bank had no duty to modify its loan by approving a short sale). Notably, two cases cited by the Defendants involved negligence claims that were predicated on the lender's allegedly wrongful initiation of court proceedings. *See Adams v. Wells Fargo Bank, N.A,* No. CV 16-0907, 2017

---

"do not have a fiduciary responsibility to their borrowers."); *Coast Auto. Grp., Ltd. V. VW Credit, Inc.,* 34 F. App'x 818, 827 (3d Cir. 2002) ("no independent fiduciary duty is generally owed from a lender to a borrower"); *Villari Brandes & Giannone, PC v. Wells Fargo Financial Leasing, Inc.,* 2013 WL 5468497, at *7 (E.D. Pa. 2013) ("a lender owes no duty of care to his borrower.").

WL 6619015, at *2 (E.D. Pa. Dec. 2017) (denying leave to add negligence claim that was premised on bank's initiation of foreclosure action); *Villari Brandes & Giannone, PC v. Wells Fargo Financial Leasing, Inc.*, 2013 WL 5468497, at *7-8 (E.D. Pa. 2013) (dismissing claim for negligence based on defendant's initiation and prosecution of a state court action to recover on a contractual debt). These latter two decisions are more analogous and potentially persuasive, but without further briefing and record development, the Court is disinclined to dismiss the Plaintiffs' negligence claim against the Bank in its entirety.

Moreover, it is an axiomatic principle of tort law that, "[i]n scenarios involving an actor's *affirmative* conduct, he is generally 'under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.'" *Dittman v. UPMC*, 196 A.3d 1036, 1046 (Pa. 2018) (quoting *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1246 (Pa. 2012) (emphasis added)); *see also* Restatement (2d) of Torts §302 cmt. a (1965) ("In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."). Here, the claim in Count III can be construed as asserting, among other things, that the Bank breached its duty of care in negligently directing the repossession of their vehicle when the Plaintiffs were not in default of their loan obligations. So construed, the Amended Complaint states a plausible duty as well as a breach of that duty. The Court will therefore deny Defendants' motion insofar as it is predicated on the argument that no duty of care could have existed between the Bank and the Plaintiffs as a matter of law. Defendants, however, may revisit this argument at a later stage of these proceedings, after a more robust factual record has been developed.

### D. The Viability of Plaintiffs' Negligent Misrepresentation Claim

In Count VI of the Amended Complaint, Plaintiffs assert a claim for negligent misrepresentation against U.S. Bank.  To state a claim for negligent misrepresentation, a plaintiff must plead "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021); *see Vliet v. Liberty Mut. Pers. Ins. Co.*, No. CV 21-3766, 2022 WL 2109203, at *2 (E.D. Pa. June 10, 2022).  Here, the Plaintiffs' negligent misrepresentation claim is predicated on the Bank's alleged failure to exercise reasonable care or competence in obtaining or communicating information concerning "the payoff/purchase agreement and any alleged default." ECF No. 26, ¶48.

Defendants contend that the claim in Count VI fails as a matter of law because Plaintiffs have not alleged that U.S. Bank is in the business of supplying information for the guidance of others or that it supplied information to Plaintiffs in their business activities.  Defendants cite *Bilt-Rite Contractors, Incorporated v. The Architectural Studio*, 866 A.2d 270, 285-86 (Pa. 2005), for the proposition that the tort of negligent misrepresentation "'is narrowly tailored, as it applies only to those businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors, and it includes a foreseeability requirement, thereby reasonably restricting the class of potential plaintiffs.'" ECF No. 31 at 9 (quoting *Bilt-Rite*).  Defendants contend that, based on the facts set forth in the Amended Complaint, Plaintiffs have not pled a cognizable claim.

This line of argument is unpersuasive.  The Pennsylvania Supreme Court has since summarized its decision in *Bilt-Rite* as follows:

this Court was presented [in *Bilt-Rite*] with the issue of "whether a building contractor may maintain a negligent misrepresentation claim against an architect for alleged misrepresentations in the architect's plans for a public construction contract, where there was no privity of contract between the architect and the contractor, but the contractor reasonably relied upon the misrepresentations in submitting its winning bid and consequently suffered purely economic damages as a result of that reliance." [866 A.2d] at 272. In addressing that issue, this Court formally adopted Section 552 of the Restatement (Second) of Torts[4] as the law in Pennsylvania for negligent misrepresentation claims involving those in the business of supplying information to others, such as an architect or design professional.[ ] *Id.* at 287. The Court noted that recovery was possible even if the third party had no direct contractual relationship with the supplier of the information, as "Section 552 negates any requirement of privity." *Id.*

*Dittman v. UPMC*, 196 A.3d 1036, 1051–52 (Pa. 2018) (footnote 5 added; *Dittman* Court's footnote omitted).  Importantly, "[t]he Court emphasized [in *Bilt-Rite*] that, in adopting Section 552, it was not supplanting the common law tort of negligent misrepresentation, but rather 'clarifying the contours of the tort as it applies to those in the business of providing information to others.'" *Id.* at 1052 n. 18 (quoting *Bilt-Rite*, 866 A.2d at 287).

Thus, *Bilt-Rite* expanded the tort of negligent misrepresentation to a class of claimants who are not in privity with the alleged tortfeasor.  It did not, as Defendants suggest, narrow the tort to *only* those individuals who fall within the parameters of Restatement Rule 552.  And, because Plaintiffs allege privity of contract with U.S. Bank, the rule espoused in *Bilt-Rite* is not directly on point.  Although Plaintiffs' negligent misrepresentation claim may ultimately be

---

[4] This rule provides, in relevant part, as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977).

barred by (among other things) the "gist of the action" and/or "economic loss" doctrines, that remains to be seen based on the facts that are developed in discovery.  In any case, the Court does not read *Bilt-Rite* as being dispositive of the claim in Count VI.  As Defendants have presented no other basis for dismissing the Plaintiffs' negligent misrepresentation claim, that cause of action presently survives.

E.  *The Viability of Plaintiffs' UTPCPL and FCEUA Claims in Count VII*

Defendants also request the dismissal of Plaintiffs' Claims under the FCEUA and the UTPCPL.  The UTPCPL prohibits "unfair methods of competition" and "unfair or deceptive acts or practices in the conduct of any trade or commerce," as defined by the statute and regulations promulgated thereunder.  73 P.S. §201-3; *see id.* at §201-2(4).  Under Section 201-2(4) of the UTPCPL, "Unfair methods of competition" and "unfair or deceptive acts or practices" includes, among other things:

\*\*\*

(ix) Advertising goods or services with intent not to sell the as advertised; [and] ....

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. §201-2(4)(ix) and (xxi).

The FCEUA is Pennsylvania's "analogue" to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated in non-relevant part by Obduskey v. McCarthy & Holthus LLP*, -- U.S. --, 139 S. Ct. 1029 (2019).  The FCEUA "establishes what shall be considered . . . unfair or deceptive acts or practices with regard to the collection of debts," 73 P.S. §2270.2, and makes them actionable as violations of the UTPCPL.  *Id.* §2270.5.  Relevantly, the FCEUA provides the following definitions of "[u]nfair or deceptive acts or practices":

**(a) By debt collectors**.--It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. § 1692 et seq.).

**(b) By creditors**.--With respect to debt collection activities of creditors in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice under this act if a creditor violates any of the following provisions:

\*\*\*

(4) A creditor may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt. . . . .

(5) A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:

\*\*\*

(ii) The false representation of the character, amount or legal status of any debt.

\*\*\*

(x) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

\*\*\*

(6) A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:

(i) The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

73 P.S. §2270.4(a) and (b)(4), (b)(5), (b)(5)(ii), (b)(5)(x), (b)(6) and (b)(6)(i).

"'Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use . . . the remedial provision of the UTPCPL [ ] to obtain relief.'" *Almashhadani v. Norris McLaughlin, P.A.*, No. 5:20-CV-04681-JMG, 2021 WL 2454456, at *6 (E.D. Pa. June 16, 2021) (quoting *Walkup v. Santander Bank, N.A.,* 147 F.

Supp. 3d 349, 358 (E.D. Pa. 2015) (ellipse and alteration in the original)).  For this reason, claims under the FCEUA and UTPCPL are examined "in tandem." *Id.*  "'To allege a claim under either the UTPCPL or the FCEUA, a plaintiff must demonstrate (1) ascertainable loss of money or property, real or personal (2) as a result of the defendant's prohibited conduct under the statute.'" *Id.* (quoting *Rivera v. Bayview Loan Servicing*, No. 19-877, 2020 WL 1508328, at *6 (E.D. Pa. Mar. 30, 2020)).

In Count VII of the Amended Complaint, Plaintiffs assert a claim under the UTPCPL premised on alleged violations of the FCEUA.  Based on the phrasing of Plaintiffs' averments, it appears they are alleging violations of 73 P.S. §§2270.4(a), 2270.4(b)(4), 2270.4(b)(5), 2270.4(b)(5)(ii), 2270.4(b)(5)(x), 2270.4(b)(6), and 2270.4(b)(6)(i).  *See* ECF No. 26, ¶¶ 59-60.  Their claims are asserted against both Defendants, as they allege that U.S. Bank is a "creditor" within the meaning of the FCUEA, and both Defendants meet the statutory definition of "debt collectors." *See id*. at ¶52-53.

In Count VIII of the Amended Complaint, Plaintiffs purport to state a claim under the UTPCPL based on alleged violations of that statute.  Specifically, Plaintiffs allege that Defendants violated Sections 201-2(4) (ix) and (xxi) by "[a]dvertising goods or services with intent not to sell them as advertised[,]" and by "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." ECF No. 26, ¶67.  Like Count VII, Count VIII is asserted against both U.S. Bank and Monarch.

Defendants contend that Plaintiffs' statutory claims in Counts VII and VIII should be dismissed for failure to establish "ascertainable loss" and because the claims are either insufficiently pled or are otherwise non-actionable as a matter of law.  We consider the Defendants' proffered bases for dismissal in turn.

1. "Ascertainable Loss"

As noted, claims under the FCEUA and UTPCPL require a showing of "ascertainable loss" as a result of the defendant's prohibited conduct. *Almashhadani*, 2021 WL 2454456, at *6; *see Jarzyna v. Home Properties, L.P.*, 783 F. App'x 223, 226 (3d Cir. 2019) (observing that a showing of "ascertainable loss" is required under the FCEUA, "because that statute piggybacks on the [UTPCPL] for its remedial mechanism, which . . . contains the 'ascertainable loss' requirement"). "Ascertainable loss" involves "[a]n actual loss of money or property." *Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL 1639417, at *13 (E.D. Pa. May 24, 2022) (internal quotation marks and citation omitted; alteration in the original); *see* 73 Pa. Stat. § 201-9.2 (allowing recovery of "actual damages" in private actions for persons who "suffer[ ] any ascertainable loss of money or property, real or personal"). The plaintiff's damages "must be identifiable and cannot be speculative." *Id.* (internal quotation marks and citations omitted).

Here, Defendants argue that Plaintiffs have not pled an ascertainable loss for purposes of their claims in Counts VII and VIII. The Court agrees. Plaintiffs acknowledge in their Amended Complaint that U.S. Bank returned the $14,000 check that they sent in payment of the vehicle. ECF No. 26, ¶11. They allude to a separate $973.50 fee which Plaintiffs believe was an attempt by U.S. Bank to recover costs associated with the repossession of their vehicle, *see* ECF No. 26, ¶¶21-25; however, Plaintiffs do not aver that they ever paid this charge or that, if paid, it was not recouped. Plaintiffs also admit that their confiscated vehicle was returned after approximately two weeks. *See id.*, at ¶20. Although Plaintiffs allege that they suffered a "loss in the value" of the vehicle, *see id.* at ¶63, they make no attempt to quantify that loss. Moreover, Plaintiffs' averments provide no basis for inferring that any depreciation in the vehicle that could have

occurred in the space of two weeks was the result of the Defendants' conduct or would not have otherwise occurred through normal "wear and tear" in the usual course of events.

Elsewhere in their pleading, Plaintiffs state that they "suffered harm consisting of the loss of the vehicle as an asset, loss of the use and enjoyment of the vehicle, and loss of time and expense dealing with Defendants' unlawful actions, and the accompanying emotional distress of having the vehicle repossessed, including but not limited to shame, humiliation, loss of sleep, frustration, and anger." ECF No. 26, ¶26. None of these harms are sufficient to establish ascertainable loss. For the reasons discussed, the alleged loss stemming from Plaintiffs' temporary deprivation of their vehicle is too speculative to constitute actionable "ascertainable loss." *See Kaymark*, 783 F.3d at 180-81 (finding that a "temporary injury" without a "specific loss of money" is "too speculative" to be considered an ascertainable loss under the UTPCPL*); Murphy v. Bank of Am., N.A.*, No. CV 13-5719, 2016 WL 1020969, at *6 (E.D. Pa. Mar. 14, 2016) (finding that plaintiff failed to plead ascertainable loss stemming from mortgage foreclosure, where default judgment against plaintiff had been voluntarily vacated by the foreclosing bank, the plaintiff had made no allegations that he actually paid any fees or costs related to the judgment, and he was still living on the mortgaged property).

Plaintiffs' lost time is not compensable under the statutes, as ascertainable loss involves only "money or property." 73 P.S. 201-9.2(a); *see In re Rutter's Inc. Data Security Breach Litigation*, 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021) (plaintiff's allegations that he had dedicated approximately five hours "dealing with" a data breach through various "remedial actions" was insufficient to establish ascertainable costs, where plaintiff did not allege having lost any money). Plaintiffs have not identified what "expenses" they incurred as a result of the Defendants' alleged misconduct, and their alleged emotional harm does not constitute

20

compensable "ascertainable loss" under the FCEUA and UTPCPL. *McNeil v. Wells Fargo Bank, N.A.*, No. CV 20-6319, 2021 WL 632640, at *4, n.51 (E.D. Pa. Feb. 18, 2021) ("Ms. McNeil's damages from emotional distress and from wasting time and effort on the phone with Wells Fargo and are not cognizable under the [UTPCPL]."); *Chalal v. Wells Fargo Asset Sec. Corp.*, No. 17-516, 2018 WL 11099082, at *1 n.2 (E.D. Pa. May 7, 2018) (finding allegations of "wasted time, money, and effort" do not constitute ascertainable losses under the Consumer Protection Law); *Allen v. Wells Fargo, N.A.,* No. 14-5283, 2015 WL 5137953, at *9 (E.D. Pa. Aug. 28, 2015) ("Claims for emotional distress are not compensable under the [Consumer Protection Law].") (citing 73 Pa. Cons. Stat. § 201–9.2)).

In their brief in opposition to the pending motion, Plaintiffs contend they have shown ascertainable loss in at least two ways. First, they cite *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1025–26 (Pa. Super. Ct. 2005), as authority for the proposition that their temporary deprivation of the vehicle and loss of its "beneficial use" over a period of two weeks constitutes a form of "ascertainable loss" under the UTPCPL. Plaintiffs proffer this theory based on their understanding that, in *Neal*, the Superior Court approved the remittitur of a jury award based on the plaintiff's monetized use of the vehicle for a period of months. But this argument is a misreading of *Neal* which, in any case, is inapposite to the case at bar. In *Neal*, the plaintiff sued a car dealership and finance company under the UTPCPL and related contract and tort theories after being sold a stolen car. The plaintiff in that case had made timely payments on the vehicle but never received permanent registration or title, and the car was ultimately confiscated and impounded by the state police. The question of ascertainable loss was not discussed in the Superior Court's decision, likely because the plaintiff had clearly established the loss of both money and personal property. Notably, the defendants in *Neal* had elicited expert testimony to

the effect that the value of the vehicle had depreciated over the course of the twenty months when it was in the possession of the plaintiff; the expert witness also acknowledged that plaintiff had derived a "transportation value" from having control of the vehicle prior to when it was seized by the police. *See* 882 A.2d at 1028 n.3. But the jury had rejected this aspect of the expert's testimony in rendering its verdict, and the trial court also declined to offset the jury's verdict by the amount of the alleged depreciation or "use value" of the vehicle; instead, the court's remittitur of the verdict was based on other factors, and its decision in that regard was upheld on appeal. *See id.* at 1028-29. Thus, the court's decision in *Neal* does not support Plaintiffs' position in this case concerning ascertainable loss.

Plaintiffs next posit that they sustained loss in the form of overpayments. They claim this occurred when their initial check for $1,916.43 was applied toward the payoff figure but they nevertheless continued to make their regular monthly payments on the lease, thereby "double paying" for a period of "at least seven months." ECF No. 35 at 12. According to Plaintiffs, "[t]his double payment not only represents an ascertainable loss in itself, but it also presumptively, until proven otherwise, inflated the second payoff figure given to Plaintiffs in 2021 resulting in additional overpayment of the Plaintiffs' obligations under the lease and/or purchase agreements." Id. To the extent Plaintiffs are asserting that they suffered an "out-of-pocket" loss in the form of an overpayment for their vehicle, this might constitute a valid, "ascertainable loss" under the FCAEU and UTPCPL. However, Plaintiffs did not plead any out-of-pocket loss in the Amended Complaint and, under well-established case law, they may not amend their pleading through assertions in their brief. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007). The claims in Counts VII and VIII are therefore subject to dismissal

but, in light of Plaintiffs' arguments concerning overpayment, the Court will grant them leave to amend their pleading to the extent they can do so consistent with their obligations under Rule 11.

### 2.   UTPCPL Section 201-2(4)(ix)

Defendants separately argue that the UTPCPL claim predicated on a violation of Section 201-2(4)(ix) must be dismissed because Plaintiffs have not adequately pled a claim of false advertising, have not pled that Defendants acted intentionally, and fail to allege that any misrepresentation on the part of U.S. Bank was likely to make a difference in their purchasing decision. The Court agrees that the claim fails to state a cognizable basis for relief.

Section 201-2(4)(ix) establishes that a defendant engages in an "unfair method of competition" and "unfair or deceptive act or practice" if it "advertis[es] goods or services with intent not to sell them as advertised." 73 P.S. §201-2(4)(ix). This provision applies to claims of false advertising, which require proof of three elements: "'(1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision.'" *Ranalli v. Etsy.com, LLC*, 570 F. Supp. 3d 301, 307 (W.D. Pa. 2021) (quoting *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009)). Plaintiffs' theory, as pled in the Amended Complaint, is that the Bank "twice intentionally and/or recklessly quoted plaintiffs a specific payoff/purchase amount and explicitly and/or implicitly agreed to accept said payment in full satisfaction of the lease and purchase agreement and to perform all administrative tasks, including applying said payment, necessary to effectuate the agreement." ECF No. 26, ¶65.

This allegation fails to establish a plausible claim for false advertising as contemplated by the UTPCPL. In essence, Plaintiffs are attempting to recast the verbal quotation of a payoff figure as an "advertisement" of a good or service. But under federal pleading standards, the

Court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). Based on Plaintiffs' allegations, it is not plausible to infer that the bank agent who supplied the payoff information engaged in "advertising goods or services" on behalf of U.S. Bank. *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (plaintiffs' allegation that defendants misrepresented the benefits, fees, and amounts owed concerning their loan and misrepresented the scheduled monthly payments under the repayment plan did not support claim of false advertising; court noted that, "[b]ecause individual employees or agents of defendants made these representations, they do not qualify as advertising and cannot constitute a violation of the UTPCPL's false advertising prohibition"); *see also Thompson v. The Glenmede Trust Co.*, No. 04428, 2003 WL 1848011, at *1 (Pa. Ct. Com. Pl. Philadelphia County Feb. 18, 2003) ("Individual representations made by [defendants] upon which [p]laintiffs allegedly relied do not constitute 'advertising' as intended by the UTPCPL.").

In addition, Plaintiffs' averments relative to Section 201-2(4)(ix) plainly relate to conduct that is attributable only to the Bank, and not to Monarch. Accordingly, Plaintiffs have failed to allege facts that plausibly implicate Monarch's liability for false advertising under Section 201-2(4)(ix). Because this aspect of Plaintiffs' UTPCPL claim cannot be rehabilitated through further amendment, it will be dismissed with prejudice.

3.   UTPCPL Section 201-2(4)(xxi)

Section 201-2(4)(xxi) of the UTPCPL, sometimes referred to as the "catch-all provision," makes it unlawful to engage in "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. § 201-2(4)(xxi). The test for "deceptive conduct" under this provision is "whether the conduct has the tendency or capacity to deceive." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649 (Pa. 2021) (internal quotation marks

and citation omitted). Thus, the "catch-all" provision "imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding." *Id.* The liability imposed by this provision is strict liability, as it does not depend on any particular *mens rea.* *Id.* at 650 ("[T]he the amended language places the duty of compliance . . . on commercial vendors, without regard to their intent. Without a state of mind requirement, the amended catch-all provision fairly may be characterized as a strict liability offense.").

Here, Defendants argue that Plaintiffs' averments regarding Section 201-2(4)(xxi) are conclusory and fail to identify the fraudulent or deceptive conduct that created confusion or misunderstanding. Defendant further insist that Plaintiffs have not alleged they were confused or misunderstood anything.

As noted, Plaintiffs' predicate their UTPCPL claims upon the averment that the Bank "twice intentionally and/or recklessly quoted plaintiffs a specific payoff/purchase amount and explicitly and/or implicitly agreed to accept said payment in full satisfaction of the lease and purchase agreement and to perform all administrative tasks, including applying said payment, necessary to effectuate the agreement." ECF No. 26, ¶65. Giving Plaintiffs the benefit of every reasonable inference, the Court finds that Plaintiffs' averments are minimally sufficient to state a plausible violation of the catch-all provision. It is true, as Defendants point out, that Plaintiffs are not claiming the payoff figures they were quoted were inaccurate on either occasion. But supplying a payoff figure for a leased vehicle creates in the mind of a reasonable consumer that a payment rendered in the quoted amount will be properly credited to the consumer's account and will result in a transfer of title. For a bank to then act otherwise by failing to properly apply the payment, resulting in the wrongful repossession of the vehicle, arguably amounts to conduct that

has the potential to deceive.  Moreover, such conduct could plausibly create a likelihood of confusion or misunderstanding on the part of the aggrieved consumer.

Consequently, the Court finds Plaintiffs' averments sufficient at this juncture to state a plausible violation of 73 P.S. §201-2(4)(xxi).  The present deficiency, as noted, is Plaintiffs' failure to adequately allege an ascertainable loss as a result of the Bank's conduct.  Moreover, for the reasons stated, Plaintiffs' averments fail to state a potential basis for liability against Monarch.  For these reasons, Plaintiffs' UTPCPL claims in Count VIII of the Amended Complaint will be dismissed with prejudice insofar as they purport to state claims against Monarch and insofar as they purport to state a violation of Section 201-2(4)(ix) against the Bank. Plaintiffs' claim against the Bank based on the "catch-all" provision in Section 202-2(4)(xxi) will be dismissed without prejudice and with leave to replead ascertainable loss, to the extent Plaintiffs are able to do so.

4.  FCEUA Section 2270.4(a)

Defendants next challenge the viability of Count VII insofar as Plaintiffs' FCEUA claim is asserted against U.S. Bank based on an alleged violation of 73 P.S. §2270.4(a).  That provision -- which is applicable to "debt collectors" -- incorporates the provisions of the federal Fair Debt Collection Practices Act ("FDCPA") by making a debt collector's violation of the FDCPA an "unfair or deceptive debt collection act or practice" under the FCEUA as well.  *See* 73 P.S. §2270.4(a) ("It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. § 1692 et seq.).").

Defendants note that, in Count I of the Amended Complaint, Plaintiffs assert an FDCPA claim against Monarch only.  Accordingly, Defendants argue that this Court should dismiss any

FCEUA claim against U.S. Bank in Count VII to the extent such claim is based on alleged violations of 73 P.S. §2270.4(a), since Plaintiffs have not alleged that U.S. Bank violated the FDCPA.

Plaintiffs do not squarely dispute this argument in their response. Instead, they suggest that Section 2270.4(a) is inapposite, and they double-down on their claim that the Bank is liable under Section 2270.4(b), which applies to "creditors."

Upon review of the parties' respective arguments, the Court finds that Defendants' position is well-taken. In any event, however, Plaintiffs appear to have waived and/or abandoned any claim that the Bank is liable under Subsection (a) of 2270.4. Accordingly, the Court will dismiss Plaintiffs' FCEUA claim against U.S. Bank with prejudice, to the extent such claim is asserted under 73 P.S. §2270.4(a).

5. FCEUA Section 2270.4(b)

Finally, Defendants move to dismiss the FCEUA claim in Count VII to the extent it is predicated on alleged violations of 73 P.S. §2270.4(b). According to Defendants, this claim should be dismissed because "it consists of nothing more than a threadbare and formulaic recital of the elements of a cause of action supported by mere conclusory statements devoid of further factual enhancement." ECF No. 31 at 16.

The Court does not agree. Plaintiffs allege in their pleading that: "After the unlawful taking of the subject vehicle, and with full knowledge of the unlawful nature by which it was taken from Plaintiffs, and with full knowledge that the subject purchase agreement was originated through fraud and in violation of the Pennsylvania Unfair Trade Practices Law, Defendants continued to refuse to return the vehicle and demanded further payment." ECF No. 26, ¶57. Plaintiffs further aver:

59. The foregoing acts and omissions of these Defendants constitute numerous and multiple violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. §2270.4(a)&(b), as evidenced by the following conduct:

a) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;

b) The use of false, deceptive or misleading representations or means in connection with the collection of a debt;

c) Making false, deceptive, or misleading representations with regard to the character, amount or legal status of the alleged debt;

d) The use of false representation or deceptive means to collect a debt or obtain information about a consumer;

e) The use of unfair or unconscionable means to collect or attempt to collect an alleged debt [and]

60.  Attempting to collect any amount not authorized by agreement or permitted by law.

*Id.* ¶¶59-60.

As this Court understands it, Plaintiffs are claiming that the Defendants committed the aforementioned violations by refusing, post-repossession, to return the subject Jeep Cherokee unless additional charges were paid, despite their alleged knowledge that there was no legitimate basis for the repossession in the first place.  So construed, the Amended Complaint states a plausible basis for the violations enumerated above.  Nevertheless, for the reasons stated, Plaintiffs have not pled an ascertainable loss resulting from the Defendants' alleged violations.  Accordingly, the claims in Count VII premised on alleged violations of 73 P.S. §2270.4(b) will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted to the following extent:

1. Plaintiffs' negligence claim in Count III will be dismissed without prejudice insofar as it is predicated on the allegations set forth in Paragraph 33(a)-(f) and (i) of the Amended Complaint;

2. Plaintiffs' FCEUA claim against U.S. Bank in Count VII will be dismissed with prejudice insofar as it is premised on an alleged violation of the Fair Debt Collections Practices Act, as set forth in 73 P.S. §2270.4(a);

3. The UTPCPL claims in Count VIII of the Amended Complaint will be dismissed with prejudice insofar as they are directed against Monarch;

4. The UTPCPL claim against U.S. Bank in Count VIII will be dismissed with prejudice insofar as it is predicated on an alleged violation of Section 201-2(4)(ix);

5. The remaining FCEUA and UTPCPL claims in Counts VII and VIII will be dismissed without prejudice and with leave to amend to the extent Plaintiffs can allege "ascertainable loss" consistent with their obligations under Rule 11.

In all other respects, Defendants' motion to dismiss will be denied.  An appropriate order follows.

Susan Paradise Baxter
United States District Judge